# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

RONALD CARTER,

    Petitioner,

    v.                              Case No. 02-C-0968

RANDY HEPP,[1]
Warden, Jackson Correctional Institution,

    Respondent.

## **DECISION AND ORDER**

    Ronald Carter, an inmate at Jackson Correctional Institution, filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the following grounds: (1) denial of his Sixth Amendment right to a speedy trial; (2) ineffective assistance of trial counsel; (3) insufficient evidence; and (4) the circuit court's abuse of its sentencing discretion.

    United States District Judge William C. Griesbach conducted a preliminary examination of the petition in accordance with Rule 4 of the Rules Governing § 2254 Cases. By an order filed October 8, 2002, Judge Griesbach ordered the respondent to answer the petition for a writ of habeas corpus.

    The parties have since consented to magistrate judge jurisdiction. By a Decision and Order dated January 21, 2003, this court granted the petitioner's request for appointment of counsel. Appointed counsel filed a brief in support of the petition and a reply brief. The petition for a writ of habeas corpus is fully briefed and will be addressed herein.

---

[1] The proper respondent in this action is Randy Hepp, the current warden at Jackson Correctional Institution. See Rule 2, Rules Governing Habeas Corpus Cases Under Section 2254. As a result, the court substituted Warden Randy Hepp as the respondent in this action.

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the matter arises under federal statutes. Venue is proper under 28 U.S.C. § 1391. The case was assigned according to the random assignment of civil cases pursuant to 28 U.S.C. § 636(b)(1)(B) and General Local Rule 72.1 (E.D. Wis.). The parties have consented to United States magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and General Local Rule 73.1 (E.D. Wis.).

## **BACKGROUND**

The facts in this case were set forth in the No Merit Report filed by the petitioner's appellate counsel:

> On February 24, 1998, [the petitioner] was charged with burglary contrary to § 943.10(1)(a), Stats. and fleeing, contrary to §§ 346.04(3) and 346.17(3)(a), Stats.
>
> The complaint states that in the early morning hours of February 22, 1998, Mr. Carter was observed by Detective Gibbs of the Milwaukee Police Department exiting a garage facing the alley behind 4002 S. 2d Street in Milwaukee. Detective Gibbs had noticed a van with its light off and the engine running parked in the middle of the alley. Detective Gibbs also noticed that the locking hasp of the garage door appeared to be broken.
>
> The complaint states that, after he noticed that he was being watched, [the petitioner] got in the van and drove off. Detective Gibbs pursued the van and eventually signaled for the van to stop. [The petitioner] did not stop but instead accelerated and was chased a considerable distance by Detective Gibbs and other police officers in marked squad cars before finally pulling over. The complaint also states that additional investigation revealed that the garage was owned by Michael Abramski, who reported that the night before the garage door was closed and locked. Mr. Abramski also reported that a snow blower appeared to have been moved away from where it was stored toward the garage door.

(Answer, Exh. C at 2).

On February 8, 2000, after a jury trial at which Milwaukee County Circuit Court Judge Mel Flanagan presided, the petitioner was convicted of one count of burglary and one count of fleeing/eluding an officer by operation of a vehicle. Subsequently, Judge Flanagan

sentenced the petitioner to serve six years on count one and one year consecutive on count two.

The petitioner's counsel file a no-merit report with the Wisconsin Court of Appeals pursuant to Wis. Stat. § 809.32(1). (Answer, Exh. C); see also, Anders v. State of Cal., 386 U.S. 738 (1967). The petitioner filed a pro se brief in response to his appellate counsel's no-merit brief. The Wisconsin Court of Appeals summarily affirmed the petitioner's conviction. The court agreed with counsel's statement of the case and description and analysis of the potential issues and, therefore, adopted the no-merit report as its own statement. The court concluded that an appeal on the issues raised in the no-merit report would lack arguable merit. The court also concluded from its independent review that there were no other issues presented by the petitioner's appeal.

The petitioner filed a petition for review with the Wisconsin Supreme Court. The Wisconsin Supreme Court denied the petition for review on September 19, 2001.

## **ANALYSIS**

The petitioner's brief addresses only his claim that his conviction violated his Sixth Amendment right to a speedy trial. This court need not "research and construct the parties' arguments." See, e.g., Spath v. Hayes Wheels Intern.-Indiana Inc., 211 F.3d 392, 397 (7th Cir. 2000). Accordingly, the court will discuss only the petitioner's claim that his conviction violated his Sixth Amendment right to a speedy trial.

### **The Federal Habeas Court's Scope of Review of State Court Rulings**

The habeas corpus statute was amended by the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub.L. No. 104-132, 100 Stat. 1214, which provides in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

This provision entitles federal courts acting within their jurisdiction to interpret the law independently, but requires them to refrain from "fine tuning" state court interpretations. Lindh v. Murphy, 96 F.3d 856, 870-877 (7th Cir. 1996), rev'd on other grounds, 521 U.S. 320 (1997). "Thus, although this court reviews the state court's legal conclusions and mixed questions of law and fact de novo, that review is 'tempered by AEDPA's deferential constraints.'" Hereford v. McCaughtry, 101 F.Supp.2d 742, 746 (E.D.Wis. 2000) (quoting Sanchez v. Gilmore, 189 F.3d 619, 623 [7th Cir. 1999]). A federal court may also grant habeas relief if the state court unreasonably applied Supreme Court law or based its decision on an unreasonable determination of the facts. 28 U.S.C. § 2254(d). A state court's factual determination is correct unless a petitioner overcomes it with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court's decision is "contrary to . . . clearly established Federal law as established by the United States Supreme Court" if it is "substantially different from relevant [Supreme Court] precedent." Washington v. Smith, 219 F.3d 620, 628 (7th Cir. 2000) (quoting Williams v. Taylor, 120 S. Ct. 1495, 1519 [2000]). The court of appeals for this circuit recognized the narrow application of the "contrary to" clause:

under the "contrary to" clause of § 2254(d)(1), [a court] could grant a writ of habeas corpus . . . where the state court applied a rule that contradicts the governing law as expounded in Supreme Court cases or where the state court confronts facts materially indistinguishable from a Supreme Court case and nevertheless arrives at a different result.

Washington, 219 F.3d at 628. The court went on to explain that the "unreasonable application of" clause was broader and "allows a federal habeas court to grant habeas relief whenever the state court 'unreasonably applied [a clearly established] principle to the facts of the prisoner's case.'" Id. (quoting Williams, 120 S. Ct. at 1523).

To be unreasonable, a state court ruling must be more than simply "erroneous" and perhaps more than "clearly erroneous." Hennon v. Cooper, 109 F.3d 330, 334 (7th Cir. 1997). Under the "unreasonableness" standard, a state court's decision will stand "if it is one of several equally plausible outcomes." Hall v. Washington, 106 F.3d 742, 748-49 (7th Cir. 1997). In Morgan v. Krenke, the court explained that

> [u]nreasonableness is judged by an objective standard, and under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

232 F.3d 562, 565-66 (7th Cir. 2000) (quoting Williams, 120 S. Ct. at 1522). Therefore, before a court may issue a writ of habeas corpus, it must determine that the state court decision was both incorrect and unreasonable. Washington, 219 F.3d at 628.

The petitioner asserts that the Wisconsin Court of Appeals based its decision on an unreasonable determination of the facts and that the court unreasonably applied Supreme Court law.[2] The petitioner contends that the Wisconsin Court of Appeals incorrectly found

---

[2]In his brief filed in support of his § 2254 petition, the petitioner did not mention AEDPA. It was not until the petitioner's reply brief that he applied the AEDPA standard of review to his petition for a writ of habeas corpus. Thus, the respondent was not able to respond to the petitioner's arguments that the Wisconsin Court of Appeals' decision was based on an unreasonable application of the facts and unreasonably applied Supreme Court precedent.

that a request for a speedy trial was made on January 13, 1999, when, in actuality, the request was made on October 16, 1998. The petitioner also contends that the Wisconsin Court of Appeals incorrectly found that the trial set for January 19, 1999, was delayed because of bad weather. Rather, the court adjourned the case so that the victim would not lose a day of work and because the court had two other cases with speedy trial demands.

The petitioner has rebutted the presumption that the state court's factual finding are correct. He has presented clear and convincing evidence indicating that he is correct in his assertion that he made his speedy trial request on October 16, 1998, and that the trial set for January 19, 1999, was not delayed because of bad weather. Nevertheless, the Wisconsin Court of Appeals' decision does not rest on either of those facts. Accordingly, the court's decision was not based on an unreasonable determination of the facts and, therefore, the petitioner is not entitled to federal habeas corpus relief because of the court's incorrect findings of fact.

The court must now determine whether the Wisconsin Court of Appeals' rejection of the petitioner's Sixth Amendment claim was either "contrary to, or involved an unreasonable application of" Supreme Court law. See Washington, 219 F.3d at 628. The Wisconsin Court of Appeals adopted petitioner's counsel's no-merit report as its own statement. The no-merit report, and therefore the Wisconsin Court of Appeals' decision, applied the four-part balancing test as set out in State v. Borhegyi, 222 Wis.2d 506, 509, 588 N.W.2d 89 (Wis. 1998). The test set out in Bornegyi is the balancing test established by the Supreme Court in Barker v. Wingo, 407 U.S. 514 (1972). The Wisconsin Court of Appeals also recognized that "[i]f the totality of the circumstances show that the defendant was denied his right to a speedy trial, dismissal of the charges is required." (Answer, Exh. C at 4); see also, Barker, 407 U.S. at 522. Thus, the Wisconsin Court of Appeals' decision was not contrary to

Supreme Court law. The court will now determine whether it was an unreasonable application of Supreme Court law.

The Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . .." The Supreme Court explained the interests protected by the speedy trial clause:

> The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges.

United States v. MacDonald, 456 U.S. 1, 8 (1982). The United States Supreme Court applies a balancing test in which the conduct of both the prosecution and the defendant are weighed to determine whether a defendant has been deprived of his right to a speedy trial. See Barker, 407 U.S. at 530. The four factors to be considered in determining whether a defendant's speedy trial right has been violated are: 1) length of the delay; 2) the reason for the delay; 3) the defendant's assertion of his right; and 4) prejudice to the defendant. Id. However, none is "either a necessary or sufficient condition to the finding of a deprivation of the right to speedy trial." Id. at 533. "Rather, they are related factors and must be considered together with such other circumstances as may be relevant." Id.

In order to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from presumptively prejudicial delay. Doggett v. United States, 505 U.S. 647, 651-52 (1992); Barker, 407 U.S. at 530 ("[u]ntil there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance.") "[D]ue to the imprecise nature of the speedy trial right, the length that will be considered presumptively prejudicial 'is necessarily dependent upon the particular circumstances of the case.'" Owens v. Frank, 394 F.3d 490,

504 (7th Cir. 2005) (quoting Barker, 407 U.S. at 530-310). In Doggett, the Court noted that "depending on the nature of the charges, the lower courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year." Id. at 652 n.1.

In this case, in applying the Barker balancing test, the Wisconsin Court of Appeals concluded that the length of the delay – of almost two years – would be presumptively prejudicial. However, the court concluded that an analysis of the remaining balancing factors overcame the presumption of prejudice.

With respect to the second factor, the court indicated that the primary reason for the delay was to ensure that the petitioner was represented by counsel. The petitioner's attorney was permitted to withdraw on June 3, 1998, because she was leaving the public defender's office. The petitioner's next attorney lost his license to practice law and was replaced by the petitioner's third attorney. The third attorney's first appearance on behalf of the petitioner was on October 16, 1998. At that time, the petitioner made a speedy trial demand.

The parties appeared for trial on January 13, 1999. The trial was adjourned without objection from the petitioner because of a congested court calendar. On April 19, 2000, the parties appeared and were prepared to go to trial. The trial was again postponed, however, because the trial court had two other trials with defendants who were in custody. The petitioner was not in custody. On July 12, 1999, the petitioner's attorney reported that the petitioner had been charged in two new cases and that the petitioner wanted to discharge him and be represented by a fourth attorney, Isaak Daniel. On November 8, 1999, the court again adjourned the case due to court congestion. Finally, on February 7, 2000, the case proceeded to trial.

-8-
Case 1:02-cv-00968-PJG    Filed 06/28/05    Page 8 of 12    Document 40

In discussing this factor, the Supreme Court has indicated that "[a] deliberate attempt to delay the trial in order to hamper the defense should be weighed heavily against the government." Barker 407 U.S. at 531. "A more neutral reason such as negligence or overcrowded courts should be weighed less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." Id.

The petitioner asserts that the delay caused by the substitution of his appointed counsel is to be assessed against the prosecution. However, the prosecution did not cause nor have any control over the substitution of the petitioner's appointed counsel. The petitioner, or his appointed counsel, was responsible for the delay until October 16, 1998, or nearly eight months of the nearly two-year delay. Although the January 13, 1999, trial was adjourned because of court congestion, it was done so without objection by the petitioner. Trial was again adjourned, without objection from the petitioner, on April 19, 2000, due to the court's congested calendar. Thus, the government is responsible for the delay from January 13, 1999, through July 12, 1999, a period of six months.

On July 12, 1999, the petitioner's appointed counsel filed a motion to withdraw as counsel because the defendant preferred counsel who had been appointed for him on a different case. After the motion was granted, the court adjourned the matter to August 16, 1999. At that time, the petitioner's counsel requested additional time. The case was then set for trial on November 8, 1999. Therefore, the petitioner bears responsibility for the delay from July 12, 1999, through November 8, 1999.

On November 8, 1999, the court adjourned the trial due to a congested calendar. The petitioner ultimately went to trial on February 7, 2000. Therefore, three more months of the delay are attributable to the government.

In this case, the delay can be attributable to both the petitioner and the government. Nonetheless, the record supports the court of appeals' conclusion that a primary reason for the delay was to ensure that the petitioner was represented by counsel.

In addressing the third factor, the court determined that the petitioner had asserted his right to a speedy trial only once. The petitioner asserts that the fact that he raised his right to a speedy trial only once is insignificant, citing Barker, 407 U.S. at 526. In Barker, the Court rejected an approach which would restrict consideration of the right to a speedy trial to those cases in which the accused demanded a speedy trial. The court referred to the approach as the demand-waiver doctrine.

However, contrary to the petitioner's argument, in this case the court of appeals did not determine that the petitioner waived consideration of his right to a speedy trial. Rather, in balancing the four Barker factors, the court took into consideration the fact that the petitioner only asserted his right to a speedy trial once. "The defendant's assertion of his speedy trial right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." Barker, 407 U.S. at 531-32. The Supreme Court "emphasize[d] that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." Id. at 532.

Finally, the court concluded that the petitioner was not prejudiced by the delay. Specifically, the court pointed out that the petitioner was not in custody until his trial date and his ability to present a defense was not compromised. According to the court, there was no indication that there were any witnesses or evidence for the defense that became unavailable as a result of the delay.

In Barker, the Court identified three types of prejudice that can result from unreasonable delay between accusation and trial: 1) oppressive pretrial incarceration; 2)

anxiety and concern of the accused; and 3) the possibility that the accused's defense will be impaired by dimming memories and loss of exculpatory evidence. Barker, 407 U.S. at 532. The Court noted that of these types of prejudice, "the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." Id.

The petitioner does not object to the court of appeals' conclusion that he was not in custody and that his ability to present a defense was not compromised. Rather, the petitioner asserts that anxiety of a pending case is sufficient to show prejudice. Although the petitioner accurately asserts that anxiety of the accused is one type of prejudice that can result from an unreasonable delay, the petitioner does not assert either that he experienced any anxiety or that the Wisconsin Court of Appeals was made aware of such anxiety. Thus, it was not unreasonable for the court of appeals to conclude that he petitioner was not prejudiced by the delay.

Review pursuant to 28 U.S.C. § 2254(d)(1) is "severely restricted." Henderson v. Briley, 354 F.3d 907, 909 (7th Cir. 2004). The court of appeals for this circuit has recently emphasized that "[t]he question before a federal court on collateral review under this part of the statute is only whether the state court's decision was so far out-of-bounds as to be 'unreasonable.'" Id.

In this case, the Wisconsin Court of Appeals' decision was not so far out-of bounds as to be "unreasonable." Based on its review, this court cannot conclude that the state court's determination the petitioner was not denied his right to a speedy trial is an unreasonable application of clearly established Supreme Court precedent. Therefore, the petitioner's petition for a writ of habeas corpus will be denied.

-11-
Case 1:02-cv-00968-PJG    Filed 06/28/05    Page 11 of 12    Document 40

## **ORDER**

**NOW, THEREFORE, IT IS ORDERED** that respondent Randy Hepp, Warden at Jackson Correctional Institution, be and hereby is **substituted** in place of Thomas Karlin.

**IT IS FURTHER ORDERED** that the petitioner's petition for a writ of habeas corpus be and hereby is **denied**.

**IT IS ALSO ORDERED** that this action be and hereby is **dismissed**.

**FINALLY, IT IS ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 28th day of June, 2005.

BY THE COURT:

s/Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge